Craig SWEIGART, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (BURNHAM CORPORATION), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 15, 2006.

Decided April 4, 2007.

Ronald T. Tomasko, Harrisburg, for petitioner.

Paul K. Paterson, Scranton, for respondent.

BEFORE: SMITH–RIBNER, Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Craig Sweigart (Claimant) petitions for review of the August 25, 2006, order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of a workers' compensation judge (WCJ) to deny Claimant's Petition for Review of Utilization Review Determination (UR Petition). We affirm in part and reverse in part.

On March 16, 1989, Claimant sustained a low back injury during the course and scope of his employment with Burnham Corporation (Employer). On December 11, 2003, Employer filed a utilization review (UR) request, seeking review of the reasonableness and necessity of diagnostic testing, office visits, injections, medication and blood patches provided by R.S. Mathews, M.D., from November 6, 2003, and ongoing. Stanley Askin, M.D., who performed the UR, determined that the medical care was not reasonable or necessary.

Claimant filed the UR Petition, and hearings were held before the WCJ. (WCJ's op. at 1.)

At the hearings, Employer presented Dr. Askin's UR determination. Although the UR request sought review of diagnostic testing and injections, Dr. Askin indicated that no diagnostic testing or injections were documented during the time frame under review. There were only three office visits. With respect to office visits on November 6, 2003, and November 25, 2003, for the purpose of administering blood patches[1] to manage a complication from an earlier injection, Dr. Askin stated that he found no justification in Dr. Mathews' records for any intervention in Claimant's nerve roots or epidural space.[2] With respect to Claimant's office visit on December 3, 2003, for the purpose of prescribing Maxidone for Claimant, Dr. Askin stated that the chronic prescription of opioid medications is no more effective in relieving low back pain than safer analgesics.[3] Thus, Dr. Askin did not consider the office visits, medication and blood patches to be reasonable or necessary.

Claimant testified on his own behalf and introduced medical records from Dr. Mathews. In a procedure report dated November 6, 2003, Dr. Mathews stated that he performed a transforaminal epidural blood patch on that date because Claimant was experiencing a low pressure headache. In an office note dated November 25, 2003, Dr. Mathews stated that Claimant was experiencing repeated headaches following a transforaminal epidural lysis of adhesions. Dr. Mathews suspected that Claimant had a dural leak and, thus, administered another blood patch. In his reports dated November 12, 2004, and December 10, 2004, Dr. Mathews stated that he advised Claimant that further injections would not likely be prudent; instead of further injections, Dr. Mathews prescribed Maxidone, as needed.

 After considering the evidence, the WCJ accepted Dr. Askin's expert opinion that Dr. Mathews' medical treatment was not reasonable or necessary because, unlike Dr. Mathews, Dr. Askin based his opinion on sources that he footnoted in his report. (WCJ's Findings of Fact, No. 11.) Thus, on July 7, 2005, the WCJ denied and dismissed Claimant's UR Petition. Claimant appealed to the WCAB, which affirmed. Claimant now petitions this court for review.[4]

---

1. An epidural blood patch is a procedure in which blood is drawn from an intravenous line in the arm and is injected into the epidural space in the spine. http://www.radiology.upmc.edu/epidural_blood_patch.html.

2. Dr. Askin also stated that persistent back pain should not be met with continuing intervention by healthcare providers because some patients appear to be more disabled after treatment than before. In support of this view, Dr. Askin cited two sources: (1) "Lumbar Degenerative Disk Disease" in *Essentials of Musculoskeletal Care*, published by the American Academy of Orthopedic Surgeons in 1997; and (2) "Clinical Practice Guideline # 14, Acute Low Back Problems in Adults," published by the U.S. Department of Health and Human Services in 1994. (*See* R.R. at 18a–19a.)

3. Dr. Askin based this statement on "Opioid Analgesics" in "Clinical Practice Guideline # 14, Acute Low Back Problems in Adults," published by the U.S. Department of Health and Human Services in 1994. (*See* R.R. at 19a.)

4. This court's scope of review is limited to determining whether an error of law has been committed, and whether the necessary findings are supported by substantial, competent evidence. *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board (Krawczynski)*, 9 Pa.Cmwlth.176, 305 A.2d 757 (1973). In a petition for review of a UR determination, the employer/insurer bears the burden of proving that the challenged medical treatment is unreasonable or unnecessary. *Topps Chewing Gum v. Workers' Compensation*

## I. Collateral Estoppel

■ Claimant first argues that Employer is collaterally estopped from challenging Dr. Mathews' care of Claimant because, in a decision dated May 23, 2001, another WCJ concluded that Dr. Mathews' care of Claimant was reasonable and necessary. We disagree.

■ Collateral estoppel acts to foreclose litigation in a later action of issues of law or fact that were actually litigated and were necessary to a previous final judgment. *Knouse v. Workers' Compensation Appeal Board (G.O.D., Inc.)*, 886 A.2d 329 (Pa.Cmwlth.2005).

Here, with respect to Maxidone, Claimant testified that he did not take that medication before late 2003, (R.R. at 34a), and the 2001 decision does not even mention Maxidone, (*see* R.R. at 87a–96a). Thus, the 2001 decision could not have litigated the reasonableness and necessity of Maxidone. Similarly, with respect to the blood patches, the 2001 decision does not mention blood patches. Thus, the earlier decision could not have litigated the reasonableness and necessity of the blood patches. Therefore, we reject Claimant's collateral estoppel argument.

## II. 34 Pa.Code § 127.471(a)

Claimant next argues that Dr. Askin's report fails to comply with 34 Pa.Code § 127.471(a), which states that reviewers **may consider** whether other courses of treatment exist, but reviewers may not determine that the treatment under review is unreasonable or unnecessary **solely** on the basis that other courses of treatment exist. Claimant asserts that Dr. Askin found Maxidone unreasonable and unnecessary **solely** because alternative pain medications exist. We disagree.

*Appeal Board (Wickizer),* 710 A.2d 1256 (Pa.

Dr. Askin found Maxidone unreasonable and unnecessary because it was an opioid and because other medications were safer. In other words, in addition to the fact that other equally effective medications existed, Dr. Askin was concerned about the risk to the patient. Thus, Dr. Askin did **not** find Maxidone unreasonable and unnecessary **solely** because other equally effective medications existed.

## III. 34 Pa.Code § 127.470(b)

■ Claimant argues that Dr. Askin's report fails to comply with 34 Pa.Code § 127.470(b), which states that reviewers may not consider or decide "quality of care" issues. Claimant asserts that Dr. Askin's preference for safer medications than Maxidone is a "quality of care" issue. We disagree.

We interpret "quality of care" in 34 Pa. Code § 127.470(b) as separate and distinct from the reasonableness and necessity of treatment. Otherwise, the regulation would preclude review of specific treatment for reasonableness and necessity because such review would involve "quality of care" considerations. It is entirely appropriate for a reviewer, in determining the reasonableness and necessity of a prescribed medication, to consider the risk to the patient, i.e., whether it was reasonable and necessary for the provider to expose the patient to the level of risk presented by the medication.

## IV. 34 Pa.Code § 127.472

■ Claimant next argues that Dr. Askin's report fails to comply with 34 Pa. Code § 127.472, which states that reports shall contain a detailed explanation of the reasons for the conclusions reached by the reviewer. Claimant asserts that Dr. Askin's report does not contain a detailed explanation for his conclusion that the

Cmwlth.1998).

blood patches were not reasonable or necessary to treat headaches that resulted from an injection and a spinal fluid leak. We agree.

Dr. Askin stated that he found no justification in Dr. Mathews' records for intervention in Claimant's nerve roots or epidural space. In other words, according to Dr. Askin, Dr. Mathews failed to convince him that the blood patches were reasonable and necessary treatment. The problem with this explanation is that, before the WCJ, Claimant did not have to prove that the blood patches were reasonable and necessary. Rather, Employer had to prove that the blood patches were **not** reasonable or necessary. If Dr. Askin had provided a detailed explanation, then Employer might have met its burden. However, Dr. Askin did not do so, and Employer relied solely on Dr. Askin's report. As a result, Employer failed to meet its burden of proof.

### V. Reasoned Decision

Finally, Claimant argues that the WCJ did not render a reasoned decision because: (1) the WCJ failed to make a credibility determination with respect to Claimant's testimony that Dr. Mathews' care alleviated his pain; and (2) the WCJ failed to make a weight of the evidence determination as to the fact that Dr. Askin had not reviewed all of Claimant's medical records.[5] We disagree.

■ First, the WCJ was not required to make a credibility determination with respect to Claimant's testimony that Dr. Mathews' care alleviated his pain. Dr. Askin's opinion was that Maxidone was not reasonable or necessary because equally effective safer medications were available. Once the WCJ accepted that opinion, the fact that Maxidone alleviated Claimant's pain was irrelevant. As for the blood patches, the WCJ found from Dr. Mathews' records that the blood patch procedure "did help to reduce [Claimant's] pain." (WCJ's Findings of Fact, No. 9(c).) It was not necessary for the WCJ to make an identical finding based on Claimant's testimony.

■ Second, the WCJ was not required to make a weight of the evidence determination as to the fact that Dr. Askin had not reviewed all of Claimant's medical records. This court has stated:

> The weight and credibility of the UR report, as with any other evidence, is for the fact-finder. Any deficiency or irregularity in the UR process **can be argued before and considered by the WCJ in determining the weight** and credibility of the UR evidence.

*Solomon v. Workers' Compensation Appeal Board (City of Philadelphia)*, 821 A.2d 215, 219 (Pa.Cmwlth.2003) (quoting *Seamon v. Workers' Compensation Appeal Board (Sarno & Son Formals)*, 761 A.2d 1258, 1262 (Pa.Cmwlth.2000)) (emphasis added). Claimant did not argue before the WCJ that Dr. Askin's report was deficient or irregular because Dr. Askin had not reviewed all of Claimant's medical records.[6]

---

**5.** Claimant asserts that the earliest medical record was from late 2001, so the earliest medical record was *"almost three (3) years after the work injury of March 16, 1989."* (Claimant's brief at 17) (underlining in original). We note that Claimant's mathematical calculation is incorrect. The 2001 medical record was almost **thirteen** years after the 1989 work injury.

**6.** It is not clear that Claimant raised this issue in his appeal to the WCAB. The WCAB states, "Claimant argues that Dr. Askin's report is **incompetent** because he failed to take into consideration all of [Claimant's] medical records...." (WCAB's op. at 8) (emphasis added). Of course, a reviewer's opinion is not automatically incompetent for failure to review the entire medical file. *Solomon.* As

Accordingly, we affirm with respect to the prescription for Maxidone and the related office visit, but we reverse with respect to the blood patches and the related office visits.

## ORDER

AND NOW, this 4th day of April, 2007, the order of the Workers' Compensation Appeal Board, dated August 25, 2006, is hereby affirmed with respect to the Maxidone prescription and the related office visit and is hereby reversed with respect to the blood patches and the related office visits.

the WCAB pointed out, the failure to consider all medical records "goes to the WCJ's weigh-ing of the evidence, which is beyond our scope of review." (WCAB's op. at 8.)