IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Golembesky,                    :
                                     :
                    Petitioner       :
                                     :
          v.                         : No. 843 C.D. 2018
                                     : Submitted: November 2, 2018
Workers' Compensation Appeal         :
Board (Worth & Company, Inc.),       :
                                     :
                    Respondent       :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: July 9, 2019


          Jason Golembesky (Claimant) petitions for review of the May 23, 2018
order of the Workers' Compensation Appeal Board (Board) that affirmed the
decision of a Workers' Compensation Judge (WCJ) denying his Petition for Review
of Utilization Review (UR) Determination.  The WCJ found that the treatment
rendered to Claimant by the provider under review, Paul Caracappa, D.O. (Provider),
from February 22, 2016, and prospectively was not reasonable or necessary.
Claimant maintains that the WCJ's decision was not based on substantial evidence.
Discerning no error, we affirm.

          Claimant injured his lower back on March 23, 2010, in the course and
scope of his employment with Worth & Company, Inc. (Employer).  Employer

accepted liability for the injury through a notice of compensation payable. On March 19, 2012, the parties executed a compromise and release agreement resolving Claimant's indemnity claim and providing that Employer remained liable for all reasonable and necessary medical expenses related to the work injury.

On March 3, 2014, Claimant sought treatment with Provider, his primary care physician, for neck stiffness and soreness and back pain. Provider's diagnosis was displacement of thoracic or lumbar intervertebral disc without myelopathy, lumbar radiculopathy, chronic pain due to trauma, and post-traumatic stress disorder. Provider initially prescribed oxycodone 15 mg, 3 tablets, and 30 mg, 4 tablets, twice daily, and continued to prescribe opioids at varying doses for purposes of Claimant's pain management. According to the last treatment note available on December 21, 2015, Provider prescribed oxycodone at doses of 15 mg, 4 tablets, and 30 mg, 4 tablets, twice daily. UR Determination, Reproduced Record (R.R.) at 8a-10a.

On February 22, 2016, Employer filed a UR petition, requesting review of the reasonableness and necessity of the treatment rendered by Provider for the period from February 22, 2016, and prospective. Michael Ziev, D.O. completed the UR Review and concluded that Provider's treatment was no longer reasonable and necessary as of February 22, 2016. UR Determination, R.R. at 6a-12a.

Dr. Ziev is board certified in family practice. He reviewed the medical records of Provider as well as x-rays and notes of treatment rendered prior to Claimant's dates of service with Provider. Dr. Ziev also reviewed Claimant's diagnoses, established treatment protocols, and Center for Disease Control (CDC) guidelines for managing chronic back pain with opioid therapy. Additionally, Dr. Ziev had a telephone conference with Provider, during which Provider reported that

2

he had not treated Claimant for several months and had discharged Claimant from his care. Provider stated that he had no plans to treat Claimant from February 22, 2016, and prospectively. WCJ's Findings of Fact (F.F.) No. 6g; R.R. at 10a. Provider further indicated that he did not provide any referrals for Claimant. Dr. Ziev also considered an employee statement from Claimant, in which Claimant described his injury and treatment and benefits of taking oxycodone.

Dr. Ziev determined that the treatment of Provider under review, specifically, monthly office visits, random urine screenings, and oxycodone 15 mg, 4 tablets, and 30 mg, 4 tablets, twice daily, were not reasonable and necessary as of February 22, 2016. In doing so, Dr. Ziev noted that under CDC guidelines, non-pharmacologic and non-opioid pharmacologic therapy is preferred for treatment of patients with chronic pain. He also explained that because Provider reported that he released Claimant from his care several months ago and had no plans to treat him from February 22, 2016, and ongoing, the monthly office visits, prescriptions for oxycodone, and random urine screenings are not reasonable and necessary prospectively as of February 22, 2016, and ongoing. UR Determination, R.R. at 10a-11a.

On May 12, 2016, Claimant filed a Petition for Review of the UR Determination, and the matter was assigned to a WCJ. In support of the review petition, Claimant testified before the WCJ, stating that he tried physical therapy at three different facilities, had 12-14 injections, and had a trial stimulator implanted, all of which were ineffective. R.R. at 29a-31a. Claimant testified that when he was taking the prescribed opioids, the medication managed his pain enough to allow him some increase in daily activity, such as taking walks. R.R. at 41a-42a, 46a.

3

Claimant also testified that he was not presently taking opioids and was participating in a six-month-long detoxification program, which included suboxone medication and regular doctor visits. R.R. at 33a-35a. Claimant stated that the suboxone was not helpful in terms of pain management and that he was essentially bedridden. R.R. at 34a-35a. At the time of his October 25, 2016 testimony, Claimant had not taken opioid narcotic pain medication for approximately four to five months and had not seen Provider since approximately February 22, 2016.

Claimant understood that the detoxification treatment plan would run for six months and then he would return to Provider and "start from the beginning" at a lower dosage of oxycodone. R.R. at 35a, 41a. He believed that the detoxification program was recommended because it was unclear whether the oxycodone was helping his back pain. R.R. at 40a-41a. In response to questions from the WCJ, Claimant explained that he intended to resume taking oxycodone "because it's the only way that I'm going to be able to have somewhat of a normal life . . . have some happiness . . . [and] do some things I used to do . . . ." R.R. at 47a.

Claimant also submitted a report from Provider, dated August 15, 2016. R.R. at 52a. In the report, Provider stated that Claimant has three different herniated discs in his thoracic spine and a protruding disc in his lower lumbar spine. Provider noted that Claimant has had multiple spinal epidural injections as well as a spinal cord stimulation and, unfortunately, he needed opioid narcotic pain medication for effective pain management. Provider added that Claimant's only other option was to undergo a risky spinal operation.

Employer presented the Independent Medical Examination (IME) report of Gregory H. Pharo, D.O., dated March 3, 2015. R.R. at 53a-59a. Dr. Pharo

4

took a history from Claimant, conducted a physical examination, and reviewed Claimant's medical records from 2010 through the date of his exam. R.R. at 53a-57a. In his report, Dr. Pharo stated that Claimant's initial diagnosis was an acute lumbar strain or sprain. R.R. at 53a; 56a. Dr. Pharo stated that Claimant was previously not responsive to various conservative treatment methods, including epidural steroid injections, intraarticular facet joint injections, and a spinal cord stimulator trial. R.R. at 53a. However, Dr. Pharo opined that the opioid medications that Claimant was taking at the time were excessive, even though the doses were lower than in the past. R.R. at 57a. Additionally, Dr. Pharo noted that while Claimant was taking "massive dosages, essentially three times what is considered a high dose of morphine equivalent," Claimant reported only a 5-10% improvement of his pain and symptoms. R.R. at 58a. Dr. Pharo also believed that, due to Claimant's high intake of opioids, Claimant has some degree of opioid-induced hyperalgesia, which may have contributed to Claimant's ongoing symptoms as well as his general lack of motivation, fatigue, and depression. *Id*. Dr. Pharo added that there are no long-term studies that support the chronic use of opioids for pain management, and he noted that the American College of Occupational and Environmental Medicine states that opioid medications have only limited benefit. *Id*. Dr. Pharo recommended that Claimant undergo an inpatient detoxification program and begin an exercise program. *Id*.

The WCJ found the medical opinions of Dr. Pharo and Dr. Ziev credible and rejected Provider's report as not credible. F.F. No. 10. The WCJ determined that Provider's report and Claimant's testimony did not support ongoing long-term opioid treatment for Claimant's symptoms. The WCJ found that Provider's report lacked critical pieces of information, such as the results of any clinical examination,

5

the risks of long-term narcotics use, and the presence or absence of any side effects from the opioids or the results of the urine screen tests. The WCJ emphasized Provider's failure to address Claimant's current detoxification treatment, stating it was a "glaring weakness." *Id.* The WCJ found Claimant's testimony credible that the opioid treatment provided some relief from his ongoing pain but found that insufficient to establish that the treatment was reasonable and necessary on a continual basis. F.F. No. 11.[1] Accordingly, the WCJ concluded that, after February 22, 2016, Provider's treatment was not reasonable or necessary. R.R. at 65a.

Claimant appealed the WCJ's decision to the Board, arguing that the WCJ's finding that Provider's continued treatments were not reasonable and necessary was not supported by substantial and competent evidence. More specifically, Claimant asserted that: 1) the WCJ based his findings on an inaccurate impression that Provider had discharged Claimant without the intent to continue treatment after Claimant's detox; 2) the WCJ erred in crediting the opinions of Dr. Ziev and Dr. Pharo over Provider's opinions; and 3) Claimant's testimony supports a finding that Provider's treatment of prescription opioids provided Claimant

---

[1] The WCJ stated:

> This Judge finds the Claimant to be candid and truthful in his belief that these medications provide palliative relief, but this is a complex medical issue and his testimony is not sufficient to persuade this Judge that the ongoing prescriptions for narcotics is reasonable and necessary. This Judge applauds his efforts to engage in a program to reduce the use of narcotics.

F.F. No. 11.

6

reasonable and necessary palliative care in treating his work-related injury pain. The Board affirmed, and Claimant now petitions this Court for review.[2]

Initially, we note that the employer bears the burden, throughout the UR process, to prove that the challenged medical treatment is unreasonable or unnecessary. *Topps Chewing Gum v. Workers' Compensation Appeal Board (Wickizer)*, 710 A.2d 1256, 1261 (Pa. Cmwlth. 1998). The WCJ's hearing on a UR petition is a *de novo* proceeding in which the UR Determination must be part of the record and considered as evidence; however, the UR Determination findings are not binding on the WCJ. Section 306(f.1)(6)(iv) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §531(6)(iv). Further, determinations concerning the weight and credibility of the UR report, as with any other evidence, are for the WCJ, as fact-finder. *Sweigart v. Workers' Compensation Appeal Board (Burnham Corporation)*, 920 A.2d 962, 966 (Pa. Cmwlth. 2007).

Claimant argues that the WCJ's decision is unsupported by the evidence. Claimant asserts that the UR Determination was flawed, in part because the UR reviewer based his conclusion on the mistaken impression that Provider had discharged Claimant without the intent to resume treatment after Claimant completed the detoxification program.

However, in his analysis, the WCJ sets forth multiple reasons why he found the continued treatment with Provider to be not reasonable and necessary, including that the serious risks outweigh the minor benefits that Claimant received

---

[2] Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1317 n.4 (Pa. Cmwlth. 1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support the conclusions reached. *Bethenergy Mines Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992).

7

from long-term opioid use. The WCJ noted Dr. Ziev's reference to CDC guidelines concerning the treatment of chronic pain. Additionally, the WCJ cited Dr. Pharo's expert opinions that no studies support the long-term use of the medications at issue, which provided Claimant only minimal pain relief. F.F. Nos. 9-10. These opinions are substantial evidence supporting the WCJ's finding that the treatment under review is not reasonable or necessary.

Claimant also argues that the WCJ erred by crediting the opinions of Dr. Ziev and Dr. Pharo over Provider's opinion. However, determinations of credibility and the weight to be accorded to evidence are the exclusive prerogative of the WCJ. *Vols v. Workmen's Compensation Appeal Board (Alperin, Inc.)*, 637 A.2d 711, 714 (Pa. Cmwlth. 1994). The WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part, and such findings are not to be disturbed on appeal. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995).

Claimant further asserts that his testimony supports a finding that Provider's treatment of prescription opioids provided palliative care in treating the pain caused by his work-related injury. Citing *Glick v. Workers' Compensation Appeal Board* (*Concord Beverage Company*), 750 A.2d 919 (Pa. Cmwlth. 2004), and *Cruz v. Workers' Compensation Appeal Board* (*Philadelphia Club*), 728 A.2d 413 (Pa. Cmwlth. 1999), Claimant argues that because the treatment at issue constitutes palliative care, the WCJ should have found it reasonable and necessary.

In *Cruz*, the WCJ found, *inter alia*, that the treatment under review was not reasonable or necessary because there had been no improvement in the claimant's condition from a functional standpoint and the treatment was intended only to control the claimant's pain. The Board affirmed. On appeal, we reversed,

8

observing that treatment may be reasonable and necessary, "even if it is designed to manage the claimant's symptoms rather than to cure or permanently improve the underlying condition." 728 A.2d at 417 (citations omitted).

In *Glick*, the WCJ determined that the treatment under review, including ultrasound, heat packs, a high voltage stimulator and a TENS unit, was not reasonable and necessary because it gave the claimant only symptomatic relief and provided no lasting benefits related to the claimant's work injury. The Board affirmed. Citing *Cruz*, we reversed and held that evidence demonstrating that treatment merely relieved the claimant's pain was insufficient to establish that the treatment was not reasonable and necessary.

However, in contrast to the facts in *Cruz* and *Glick*, Dr. Ziev and Dr. Pharo did not opine that Provider's treatment was not reasonable and necessary solely because it was merely palliative and did not have a lasting benefit for Claimant's work injury. Instead, both Dr. Ziev and Dr. Pharo stated that long-term opioid treatment should only be continued if there is clinically meaningful improvement in pain and function in accordance with current medical guidelines and standards. Both doctors also determined that the opioid therapy did not provide Claimant with any meaningful improvement in pain management or functionality. In fact, Dr. Pharo opined that the opioid treatment potentially contributed to Claimant's symptoms. Thus, the decisions in *Cruz* and *Glick* do not compel a different outcome here. Further, although the WCJ found Claimant to be credible that the opioid treatment provided some palliative relief, the WCJ found Claimant's testimony insufficient to rebut Employer's evidence that the serious risks of long-term opioid use outweigh its minor benefits. This determination of evidentiary weight is not subject to review on appeal. *Greenwich Collieries*, 664 A.2d at 706.

9

The facts in this case are analogous to those in *Bedford Somerset MHMR v. Workers' Compensation Appeal Board (Turner)*, 51 A.3d 267 (Pa. Cmwlth. 2012). In *Turner*, the WCJ found that the claimant's use of fentanyl, in lozenge form, was not reasonable and necessary because of its addictive nature and because it was not approved for use in connection with the claimant's condition. The Board reversed based on the claimant's testimony that she was not able to find a viable alternative treatment. On appeal, the employer argued that the Board erred by disturbing the WCJ's credibility determination, and this Court agreed.

We observed in *Turner* that, "a UR Reviewer may consider whether it is reasonable and necessary for a provider to expose a patient to the level of risk presented by a medication." *Id*. at 272-73. Thus, we held that the WCJ's decision to credit the testimony of the medical witness, which confirmed the UR reviewer's conclusion that the use of fentanyl lozenges was not reasonable and necessary because of the drug's highly addictive nature, was binding upon appeal. *Id*. at 273. Similarly, here, the WCJ credited the testimony of Dr. Ziev and Dr. Pharo that the risks of long-term opioid treatment outweighed the minimal benefit that Claimant was receiving, and that credibility determination is not subject to challenge on appeal. *Turner*; *Greenwich Collieries*.

Upon review, we conclude that the testimony credited by the WCJ, specifically, the opinions of Dr. Ziev and Dr. Pharo, constitutes substantial and competent evidence to support the WCJ's determination that Provider's treatment from February 22, 2016, and ongoing was not reasonable and necessary. Accordingly, the Board properly affirmed the WCJ's decision.

For all the foregoing reasons, we affirm.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Golembesky,            :
                                     :
                  Petitioner   :
                                     :
                v.            :  No. 843 C.D. 2018
                                     :
Workers' Compensation Appeal   :
Board (Worth & Company, Inc.),   :
                                     :
            Respondent :

# **O R D E R**

AND NOW, this 9<u>th</u> day of <u>July</u>, 2019, the order of the Workers' Compensation Appeal Board, dated May 23, 2018, is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge