# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Mushow,                    :
                    Petitioner       :
                                     :   No.  121 C.D. 2021
         v.                          :
                                     :   Submitted:  September 17, 2021
Doyle and Roth Manufacturing         :
(Workers' Compensation Appeal        :
Board),                              :
                    Respondent       :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: April 12, 2022


Michael A. Mushow (Claimant) petitions for review of the January 14, 2021 order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a workers' compensation judge (WCJ) denying the Petition for Review of Utilization Review (UR) Determination (UR Petition) filed by Claimant. For the reasons that follow, we affirm.

## Background

In December of 2012, Claimant sustained a work-related injury in the form of a right knee medial meniscus tear. Doyle and Roth Manufacturing (Employer) accepted liability for the injury and, pursuant to the provisions of the Workers'

Compensation Act (Act),[1] issued a Notice of Compensation Payable. (Certified Record (C.R.), Item No. 18.)[2] In June of 2019, Employer and its insurer filed a request for a UR determination[3] regarding the treatment rendered to Claimant by Avner R. Griver, M.D., Claimant's pain management provider, beginning June 7, 2019, and ongoing. (C.R., Item No. 17.) Specifically, the request for a UR determination sought a review of the reasonableness and necessity of Claimant's medical prescriptions for OxyContin 60 mg twice a day, and oxycodone 10 mg four times a day, prescribed by Dr. Griver.

On August 15, 2019, Richard S. Kaplan, M.D., the Utilization Review Organization (URO) reviewer, rendered a UR determination on the reasonableness and necessity of Claimant's treatment with Dr. Griver. *Id.* In doing so, Dr. Kaplan reviewed Claimant's medical records and history, discussed Claimant's case with Dr. Griver, and reviewed a written statement from Claimant. *Id.*, Report at 1. Dr. Kaplan stated that the last office note in Dr. Griver's records, dated February 28, 2019,[4] indicated that Claimant had right knee and hip pain, and that Dr. Griver continued to prescribe him with OxyContin 60 mg twice per day and oxycodone 10 mg four times daily. *Id.* at 2. That office note also detailed that Dr. Griver discussed with Claimant

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

[2] The Reproduced Record does not comply with Pa.R.A.P. 2173, in that it lacks pagination. Accordingly, we cite to the Certified Record throughout this opinion.

[3] Section 306(f.1) of the Act, 77 P.S. §531, requires that disputes regarding the reasonableness and necessity of medical treatment be submitted for utilization review by a utilization review organization (URO) authorized by the Department of Labor and Industry to perform such reviews. According to Section 306(f.1)(6)(ii) and (iv) of the Act, 77 P.S. § 531(6)(ii) and (iv), the URO is to issue a report and the report is to be made part of the record before the WCJ, who shall consider it as evidence but is not bound by it.

[4] Dr. Griver advised that Claimant was also seen on June 20, 2019, but the office note was not in the chart.

2

a possible total hip replacement and that Claimant's opioid dosing was above the Centers for Disease Control and Prevention's (CDC) recommended dosing guidelines. *Id*. Dr. Kaplan reported that, on July 26, 2019, he discussed with Dr. Griver complications associated with a possible hip replacement procedure, and Dr. Griver indicated that he planned to perform a genicular nerve block with possible radiofrequency ablation, and thereafter reduce Claimant's morphine equivalent dose (MED) below 100 until the hip replacement surgery was performed. *Id*. Dr. Kaplan also stated that their discussion focused on possible alternative treatments, including Cymbalta, topical Pennsaid, and a trial test using a walker. *Id*. In Claimant's written statement, he indicated that his current opioid dosing keeps his knee more limber and functional, and without the medication he is unable to walk. *Id*.

Dr. Kaplan began his analysis by noting that Claimant's current MED is 240, an amount that "is substantially higher than the 50 mg[ ]to[ ]90 mg MED range[, which is indicated] as a red flag level discussed in Pennsylvania and CDC [g]uidelines . . . ." (C.R., Item No. 17, Report at 3.) He stated that he and Dr. Griver "agreed that a target MED would be 60 mg[ ]to[ ]90 mg morphine equivalent, and that this may be helped with the addition of Cymbalta and Pennsaid as adjuvant medications along with a trial use of a walker." *Id*. He acknowledged, however, that those other possible treatments were not part of his review. *Id.* Accordingly, Dr. Kaplan found the challenged treatment reasonable and necessary, in part. He found that Claimant's total daily OxyContin and oxycodone dosage of 160 mg, or an MED of 240, exceeded recognized medication guidelines and CDC guidelines, and, as such, the prescriptions were not justified during the period under review. *Id.* Dr. Kaplan further found, however, that OxyContin and oxycodone are reasonable and medically necessary at a

continuing tapering dosage with a target total of 90 MED or less, "or, in other words, a total daily usage of OxyContin plus oxycodone of 60 mg or less." *Id.*

On September 17, 2019, Claimant filed his UR Petition of Dr. Kaplan's August 15, 2019 UR determination, which was assigned to a WCJ. (C.R., Item Nos. 2 & 3.) Before the WCJ, Claimant submitted an affidavit in support of his UR Petition, stating that he sustained a work-related injury to his right knee in December of 2012, has had two surgeries and two total knee replacements since then, and has developed intractable pain syndrome as a result of the injury and subsequent surgeries. (C.R., Item No. 15.) He attested that Dr. Griver prescribed him 60 mg of OxyContin, which Claimant takes twice a day, and 10 mg of oxycodone, which Claimant takes four times a day, for pain. Claimant explained that the medication allows him to move more freely and with less pain, though he is never pain-free. He claimed that his mobility is severely limited without the medication.

Claimant also submitted a December 17, 2019 report from Dr. Griver, in which Dr. Griver described his attempts to manage Claimant's chronic right knee pain since 2017. (C.R., Item No. 13.) Dr. Griver noted that Claimant has had multiple right knee surgeries with secondary infection and has been on "relatively high dosages" of opioid pain medication for many years. *Id.* Dr. Griver explained that when Claimant came under his care in July of 2017, his MED was 330. However, when seen on September 23, 2019, Dr. Griver noted that he was continuing to follow Claimant's complaints of right knee and right hip pain, and that Claimant was taking lower dosages (an approximate one-third decrease to an MED of 240) compared to the dosages prescribed to him in July 2017. Dr. Griver explained that he discussed Claimant's case with Dr. Kaplan, who recommended that Dr. Griver further cut back Claimant's opioid dosage in line with CDC guidelines. Dr. Griver noted that he discussed alternative

4

treatments with Claimant at his September 23, 2019 appointment, including the use of a walker, the drug Cymbalta, a genicular nerve block, opioid reduction, and a new medication called Tanezumab.  Dr. Griver stated that he tried the genicular nerve block on Claimant in November of 2019, without success, and that Cymbalta and use of a walker were also not successful.  As a result, according to Dr. Griver, the only remaining options are Claimant's possible use of the new drug, Tanezumab, and/or weaning Claimant off of his opioid pain medications "without any attention being paid toward his function or pain complaints." *Id.*  Dr. Griver opined that, while it would be reasonable to reduce Claimant's MED below 240, reaching an MED of 90 "may be impossible" given Claimant's "long history of opioid dependence" and his "objective abnormalities." *Id.*

Claimant also submitted an October 28, 2019 report from Charles L. Nelson, M.D., who is orthopedic surgery from the Hospital of the University of Pennsylvania. (C.R., Item No. 14.)  Dr. Nelson explained that he reevaluated Claimant on the day of the report, which was 18 months after he performed Claimant's right total knee replacement with reimplantation in response to a periprosthetic infection.  Dr. Nelson noted that, at the time of the second knee surgery, Claimant had severe scarring and bone loss and required a hinged revision knee prosthesis.  According to Dr. Nelson, recent radiographs indicate that the components of Claimant's right knee implant are well aligned and fixed, and blood work shows that infection is unlikely, yet Claimant continues to have significant pain that is becoming difficult to manage.  Dr. Nelson explained that Claimant's range of motion is limited, his knee is stable, his swelling is constant, and there is significant scar tissue present.  Dr. Nelson opined that there is no surgical solution for Claimant's pain, a conclusion which he relayed to Claimant at the October 28, 2019 visit.  Dr. Nelson stated that the scar tissue present in Claimant's

knee will persist, because, even if it is surgically removed, it would likely return. In Dr. Nelson's opinion, if Claimant's knee became infected again, he would likely need an amputation above the knee. Dr. Nelson therefore recommended "nonoperative measures and pain management." *Id.* at 2.

On February 6, 2020, the WCJ issued a determination, in which he credited Dr. Kaplan's opinions regarding Claimant's continued need for opioid pain medication, and Dr. Kaplan's testimony to the extent that his opinions differed from those of Dr. Griver regarding opioid dosing. (WCJ Decision, 2/6/2020, Finding of Fact (F.F.) No. 8.) The WCJ specifically found credible Dr. Kaplan's opinion that Claimant's current combined dosages of OxyContin and oxycodone, equaling an MED of 240, were excessive under medication guidelines and CDC guidelines, based on Dr. Kaplan's discussions with Dr. Griver. *Id.* The WCJ pointed out Dr. Griver's agreement with Dr. Kaplan "that a target MED would be 60 mg to 90 mg [MED], and that this may be helped with the addition of Cymbalta and Pennsaid as adjuvant medications along with a trial [use] of a walker." *Id.* The WCJ further accepted Dr. Kaplan's tapering recommendations to the extent they are consistent with CDC guidelines. *Id.* As such, the WCJ found that Claimant's OxyContin and oxycodone medications are reasonable and necessary, but only "at a continuing tapering dosage with a target total of 90 MED or less, or a total daily usage of Oxy[C]ontin plus [o]xycodone of 60 mg or less[,] beginning June 7, 2019, and ongoing." *Id.* The WCJ further noted that "[w]hile Dr. Griver's opinions concerning tapering of opioids are instructive," they were "not wholly convincing." *Id.* The WCJ therefore concluded that Employer met its burden of proof on the UR Petition to the extent that Claimant's current level of opioid pain medication should be reduced pursuant to Dr. Kaplan's findings, and thus, denied the UR Petition. (WCJ Decision, 2/6/2020, Conclusion of Law No. 1; Order.)

6

Claimant appealed to the Board, essentially arguing that the WCJ's decision is not supported by substantial evidence because the WCJ disregarded the purportedly credible opinions of Claimant's two treating physicians, Dr. Griver and Dr. Nelson, with regard to the appropriate opioid dosages prescribed to Claimant and the alleged "fact that there are no other reasonable methodologies of treatment calculated to give Claimant the same level of pain relief as the prescribed" opioids. (C.R., Item No. 5.) The Board affirmed the WCJ's decision, and Claimant now petitions this Court for review of the Board's decision.[5] (C.R., Item No. 7.)

## Discussion

Initially, we note that the employer bears the burden of proof throughout the UR process to establish that the challenged medical treatment is not reasonable or necessary, no matter which party prevailed at the UR level. *Topps Chewing Gum v. Workers' Compensation Appeal Board (Wickizer)*, 710 A.2d 1256, 1261 (Pa. Cmwlth. 1998). The WCJ's hearing on a UR petition is a *de novo* proceeding in which the UR report must be made part of the record and considered as evidence; however, the UR report's findings are not binding on the WCJ. Section 306(f.1)(6)(iv) of the Act, 77 P.S. § 531(6)(iv); 34 Pa. Code §127.556. Further, determinations concerning the weight and credibility of the UR report, as with any other evidence, are for the WCJ, as fact-finder. *Sweigart v. Workers' Compensation Appeal Board (Burnham Corp.)*, 920 A.2d 962, 966 (Pa. Cmwlth. 2007).

---

[5] This Court reviews the WCJ's adjudication to determine whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *MV Transportation v. Workers' Compensation Appeal Board (Harrington)*, 990 A.2d 118, 120 n.3 (Pa. Cmwlth. 2010). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support the conclusions reached. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992).

7

On appeal to this Court, Claimant essentially argues that the Board erred in affirming the WCJ's denial of Claimant's UR Petition because the WCJ's decision is not supported by substantial evidence. In so arguing, Claimant first asserts that the WCJ and the Board erred by crediting Dr. Kaplan's opinions over the opinions of Claimant's treating physicians, Dr. Griver and Dr. Nelson, as they relate to the appropriate opioid dosages prescribed to Claimant and the alleged fact that there are no other reasonable alternatives to treat Claimant's pain, surgical or otherwise, other than the prescribed opioids. (Claimant's Br. at 4, 8-9.)

More specifically, Claimant contends that Dr. Kaplan ignored Dr. Griver's statements that Claimant had tried Cymbalta previously without success, that Dr. Griver had tried a genicular nerve block on Claimant, also without success, and that the new drug Tenazumab would not be available until well into the year 2020. *Id.* Claimant also points out that Dr. Kaplan failed to speak to Dr. Nelson, and argues that, had he done so, Dr. Kaplan would have realized that there is no surgical solution, or surgical alternative, to treat Claimant's pain. *Id.* at 9. Based upon Dr. Kaplan's failure to consider the opinions of Claimant's treating physicians, Claimant asserts that Dr. Kaplan had an incomplete grasp of Claimant's medical situation, thus rendering his opinion incompetent to support the WCJ's finding that Dr. Griver's treatment of Claimant was not reasonable or necessary at the currently prescribed dosages. *Id.* Finally, Claimant argues that the WCJ and the Board erred by accepting Dr. Kaplan's UR determination, which impermissibly speculated upon the need for care six months or more in the future. *Id.* at 4, 10.

Employer responds by pointing out that the WCJ had the sole discretion to make credibility and evidentiary weight determinations in this case, which this Court may not disturb on appeal. Moreover, the WCJ thoroughly explained his reasons for

8

such determinations. Therefore, Employer contends, the WCJ's decision is supported by substantial evidence of record. Upon review, we agree with Employer.

First, we disagree with Claimant's assertion that Dr. Kaplan ignored Dr. Griver's statements. In preparing his report, Dr. Kaplan reviewed Dr. Griver's treatment records and personally spoke with him, "at length[,]" about Claimant's medical history and opioid treatment. (C.R., Item No. 17, Report at 1-2.) Dr. Kaplan reported that, when he spoke with Dr. Griver on July 26, 2019, Dr. Griver explained that he **planned to perform** a genicular nerve block, and they further discussed **possible** alternative treatments, including Cymbalta, among other things. *Id*. at 2. Only later, in his December 17, 2019 report, did Dr. Griver explain that he tried, **on November 19, 2019**, a genicular nerve block on Claimant that was unsuccessful. *See* C.R., Item No. 13. Moreover, because Dr. Kaplan reported that he and Dr. Griver discussed the possibility of Claimant trying Cymbalta, and Dr. Griver reported in December 2019 that "[w]e also tried Cymbalta without efficacy," C.R., Item No. 13, it stands to reason that the trial usage of Cymbalta occurred after Dr. Kaplan issued his UR report. Given these facts, we cannot say that Dr. Kaplan ignored Dr. Griver's statements, indicating that a genicular nerve block and a trial usage of Cymbalta were not successful, when those statements were made by Dr. Griver on December 17, 2019, **four months after** Dr. Kaplan issued his August 15, 2019 UR report.

We also reject Claimant's assertion that, because Dr. Kaplan did not speak with Dr. Nelson, Dr. Kaplan lacked "a complete grasp of [Claimant's] medical situation[,]" thus rendering Dr. Kaplan's opinions incompetent. (Claimant's Br. at 9.) In so doing, we note that Claimant did not raise, either before the WCJ or in his appeal to the Board, any issue regarding the competency of Dr. Kaplan's opinions in this case. Rather, below, Claimant only challenged the WCJ's credibility and evidentiary weight

9

determinations, arguing that the WCJ's decision is not supported by substantial evidence because the WCJ disregarded the purportedly credible opinions of Claimant's two treating physicians, Dr. Griver and Dr. Nelson. *See* C.R., Item No. 5. It is well settled that issues not raised before the WCJ and the Board are waived on appeal to this Court. *Marek v. Workers' Compensation Appeal Board (Logistics Express, Inc.)*, 96 A.3d 434, 440 n.8 (Pa. Cmwlth. 2014). Accordingly, Claimant's argument in this regard is waived.

However, even if we were to consider Claimant's assertion that Dr. Kaplan's opinions, and thus his UR determination, were incompetent to support a finding that the challenged medical treatment was not reasonable or necessary due to Dr. Kaplan's failure to speak to Dr. Nelson, we would find that Claimant is not entitled to relief. We have previously held that a UR reviewer's failure to speak with the claimant's health care provider, or review the claimant's entire medical file, does not preclude the UR reviewer from making a determination of reasonableness or necessity of a particular treatment, nor does it preclude a WCJ from crediting and relying on a UR report. *Solomon v. Workers' Compensation Appeal Board (City of Philadelphia)*, 821 A.2d 215, 218-20 (Pa. Cmwlth. 2003) (discussing *Seamon v. Workers' Compensation Appeal Board (Sarno & Son Formals)*, 761 A.2d 1258 (Pa. Cmwlth. 2000) (holding the same), and rejecting the claimant's similar competency argument). We further observed in *Solomon*, relying on *Seamon*, that in the absence of a statement by a reviewer that she was unable to render an opinion because medical records were missing, there was no need for her to review all the records of everyone who provided medical treatment to the claimant in order to render a competent opinion concerning the reasonableness and necessity of the treatment at issue; the same is true where a UR

10

reviewer fails to speak with one of a claimant's treating health care providers. *Solomon*, 821 A.2d at 219-20.

That Dr. Kaplan failed to speak with Dr. Nelson does not automatically render Dr. Kaplan incapable of making a determination as to the reasonableness and necessity of Dr. Griver's treatment of Claimant. Rather, the failure of Dr. Kaplan to speak with Dr. Nelson goes to the WCJ's weighing of the evidence and credibility determinations, both of which are beyond our scope of review. *See Solomon*, 821 A.2d at 220 (stating that the WCJ, as fact-finder, makes credibility and evidentiary weight determinations regarding irregularities or deficiencies in the evidence, and that the breadth of information reviewed by the UR reviewer is a factor that the WCJ may consider, but it is no more conclusive than any other single factor that is considered in evaluating the credibility of conflicting expert opinions). Here, Dr. Kaplan did not indicate that he was unable to render an opinion due to his failure to speak to Dr. Nelson. Nor did Dr. Kaplan state that he was unable to assess Claimant's current medical condition and complaints, which were essential to his determination of whether the OxyContin and oxycodone dosages prescribed to Claimant were necessary or reasonable. The WCJ was, therefore, not precluded from crediting and relying upon Dr. Kaplan's UR report. Accordingly, in the absence of waiver, we would decline Claimant's invitation to declare Dr. Kaplan's opinion, and his UR determination, incompetent evidence based on Dr. Kaplan's failure to speak to Dr. Nelson.

In arguing that the WCJ and the Board erred by crediting Dr. Kaplan's opinions over the opinions of Claimant's treating physicians, Dr. Griver and Dr. Nelson, Claimant essentially asks this Court to overturn the WCJ's credibility determinations and accept his preferred interpretation of the evidence in this case. We decline to do so. As mentioned above, determinations of credibility and evidentiary

11

weight, including that of the UR Report, are within the exclusive prerogative of the WCJ, as fact-finder. *Sweigart*, 920 A.2d at 966; *Solomon*, 821 A.2d at 220.

Claimant's argument that Dr. Kaplan's UR report did not provide substantial evidence necessary to support the WCJ's decision as to the treatment in this case is unavailing. The WCJ reviewed the evidence, including Dr. Kaplan's report, Claimant's affidavit, Dr. Griver's report, and Dr. Nelson's report. *See* WCJ Decision, 2/6/2020, F.F. Nos. 3-7. Regarding the necessity and reasonableness of the prescriptions, the WCJ accepted Dr. Kaplan's opinions, reflected in his UR report, that Claimant has a continued need for opioid medication. However, the WCJ also credited Dr. Kaplan's opinion that Claimant's current combined dosages of OxyContin and oxycodone, equaling an MED of 240, were excessive under both medication and CDC guidelines, and accepted it over the opinions of Dr. Griver to the extent their opinions differed with respect to opioid dosing, which the WCJ was entitled to do. (WCJ Decision, F.F. No. 8); *Sweigart*, 920 A.2d at 966. Moreover, the WCJ specifically pointed out that Dr. Griver agreed with Dr. Kaplan "that a target MED would be 60 mg to 90 mg [MED], and that this may be helped with the addition of Cymbalta and Pennsaid as adjuvant medications along with a trial [use] of a walker." (WCJ Decision, F.F. No. 8.) That those alternative adjuvant medications may have later proved to be unsuccessful is irrelevant to Dr. Kaplan's utilization review of the reasonableness and necessity of the OxyContin and oxycodone dosages prescribed to Claimant by Dr. Griver. The WCJ further declined to credit Dr. Griver's opioid tapering recommendations, which the WCJ was empowered to do, and instead accepted Dr. Kaplan's recommendations as credible to the extent they are consistent with CDC guidelines. *See id.* (quoting CDC guidelines relating to prescribing opioids for chronic pain and tapering recommendations); *see also* C.R., Item No. 19 (CDC Guidelines).

Accordingly, we cannot agree with Claimant that substantial evidence does not support the WCJ's findings that Claimant's OxyContin and oxycodone medications are reasonable and necessary, but only "at a continuing tapering dosage with a target total of 90 MED or less, or a total daily usage of Oxy[C]ontin plus [o]xycodone of 60 mg or less[,] beginning June 7, 2019, and ongoing[.]" *Id.* Dr. Kaplan's UR report, which the WCJ credited, constitutes substantial evidence to support those findings.

Finally, Claimant argues that the WCJ and the Board erred by accepting Dr. Kaplan's UR determination, which impermissibly speculated upon the need for care six months or more in the future. Unfortunately, we are constrained to find this issue waived because Claimant did not raise it before the WCJ or in his appeal to the Board. We reiterate that, below, Claimant only challenged the WCJ's credibility and evidentiary weight determinations, arguing that the WCJ's decision is not supported by substantial evidence because the WCJ disregarded the purportedly credible opinions of Claimant's two treating physicians, Dr. Griver and Dr. Nelson. *See* C.R., Item No. 5. As stated above, it is well settled that issues not raised before the WCJ and the Board are waived on appeal to this Court. *Marek*, 96 A.3d at 440 n.8.[6]

## Conclusion

Upon review, we conclude that the evidence credited by the WCJ constitutes substantial and competent evidence to support the WCJ's determination. We therefore hold that the Board properly affirmed the WCJ's decision in this case.

---

[6] However, even if we reached the issue, Claimant would not prevail. The WCJ agreed with Dr. Kaplan that opioid tapering was necessary and that a 60 mg daily dosage was the target, but a 6-month deadline was not imposed. The WCJ explained that, in accordance with CDC guidelines, a decrease of 10% of the original dose per week was a reasonable starting point. However, the WCJ acknowledged that tapering may be modified based on the needs of the patient and that, should Dr. Griver determine that it was necessary to modify Claimant's opioid reduction, he should document the reasons for any modifications. Thus, even if the issue was not waived, we would conclude that the WCJ did not impermissibly speculate about Claimant's future need for treatment.

13

Accordingly, we affirm the Board's order.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Mushow,                      :
                    Petitioner          :
                                        :   No.  121 C.D. 2021
            v.                          :
                                        :
Doyle and Roth Manufacturing           :
(Workers' Compensation Appeal          :
Board),                                 :
                    Respondent          :

## ***ORDER***


     AND NOW, this 12th day of April 2022, the January 14, 2021 order of the Workers' Compensation Appeal Board is hereby affirmed.


                                _____
                                PATRICIA A. McCULLOUGH, Judge