IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Hughes,                :
         Petitioner     :
                   :   No. 333 C.D. 2021
           v.          :
                   :   Submitted: November 4, 2021
Wawa, Inc. (Workers' Compensation  :
Appeal Board),            :
         Respondent   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH              FILED: December 13, 2021

       Frank Hughes (Claimant) petitions for review of the March 8, 2021 and March 30, 2021 orders of the Workers' Compensation Appeal Board (WCAB), affirming the decision of a Workers' Compensation Judge (WCJ) that denied his petition for review of two utilization review (UR) determinations and penalty petition, and denying his petition for rehearing. We affirm.

**Factual and Procedural History**

       On April 1, 2000, Claimant sustained a work-related injury while in the course and scope of his employment as a truck driver with Wawa, Inc. (Employer). A notice of compensation payable described Claimant's work injury as a low back herniation. (Reproduced Record (R.R.) at 341a.) The parties entered into a compromise and release (C&R) agreement, which was approved by the WCJ on August 24, 2011. The C&R agreement described the compensable injury as herniated

discs at L4-5 and L5-S1, adjustment reaction with mixed anxiety and depressed mood, and pain disorder. The medical portion of Claimant's workers' compensation claim remained open with Employer continuing to be responsible for payment of medical benefits determined to be reasonable, necessary, and related to Claimant's work injury. *Id*. at 341a.

### UR Request - Treatment by Dr. Davis

On April 13, 2018, Employer, through its third-party administrator, AIG Claims, Inc., filed a request for a UR determination[1] regarding the treatment rendered to Claimant by Dr. Christopher Davis, who is board certified in pain management and family medicine, for treatment after April 12, 2018. Specifically, the request for a UR determination sought the reasonableness of the number and frequency of Claimant's office visits to Dr. Davis, and prescriptions for Oxycontin 60 mg, Oxycontin 80 mg, Valium 10 mg, Sonata 10 mg, MiraLAX powder, and amitriptyline.

On May 15, 2018, the reviewer, Sarah Reinhardt, D.O., who is board certified in family medicine, circulated a UR determination regarding the reasonableness and necessity of the treatment of Dr. Davis. Dr. Reinhardt found the challenged treatment reasonable and necessary, in part. She found that office visits more than once per month were unreasonable and unnecessary, and that although Oxycontin may be justified for Claimant's diagnoses and complaints, the combined

---

[1] Section 306(f.1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §531, requires that disputes regarding the reasonableness and necessity of medical treatment be submitted for utilization review by a utilization review organization (URO) authorized by the Department of Labor and Industry to perform such reviews. According to Section 306(f.1)(6)(ii) and (iv) of the Act, 77 P.S. §531(6)(ii) and (iv), the URO is to issue a report and the report is to be made part of the record before the WCJ, who shall consider it as evidence but is not bound by it.

2

dose for Claimant's two prescriptions exceeded recognized medication guidelines and the Centers for Disease Control and Prevention (CDC) guidelines, and as such, the Oxycontin prescriptions were not justified during the period under review. *Id*. at 341a.

*UR Request - Treatment by Dr. Sing*

On October 23, 2018, Employer requested UR review of treatment by Dr. Davis' partner, Robert Sing, D.O., from August 27, 2018, and ongoing, including office visits, Oxycontin 80 mg, Oxycontin 60 mg, Valium, amitriptyline, MiraLAX, Elavil, blood/urine testing, and any/all other treatment.

On December 12, 2018, the reviewer, Sean P. Hampton, D.O., issued a UR determination, finding Dr. Sing's treatment necessary, in part. Dr. Hampton found that Claimant's Oxycontin dosage of 330 morphine milligram equivalents (MME) far exceeded the CDC guidelines, which recommend limiting the dose to less than 50 MME per day and avoiding dosing higher than 90 MME per day. Dr. Hampton further noted that abrupt discontinuation of narcotic medications can result in health and withdrawal issues, and that a period of six months for weaning would be reasonable and necessary. He therefore found Oxycontin prescriptions reasonable and necessary until June 7, 2019, with reduced dosages and frequencies to completion of weaning, and unreasonable and unnecessary beyond June 7, 2019. Dr. Hampton also found office visits with Dr. Sing more than one time per month between August 27, 2018, and June 7, 2019, and for more than once every three months after June 7, 2018, to be unreasonable and unnecessary medical treatment. *Id*. at 341a.

*Claimant's Petitions for Review of UR Determinations*

Claimant filed petitions for review of Dr. Reinhardt's May 15, 2018 UR determination and Dr. Hampton's December 12, 2018 UR determination. *Id*. at 341a-

3

42a. The petitions were consolidated and assigned to a WCJ. The WCJ appointed William Ingram, D.O., as an impartial physician to examine Claimant and submit a report.

### *Claimant's Penalty Petition*

On July 9, 2018, Claimant filed a petition for penalties, alleging that Employer failed to pay for reasonable and necessary treatment, specifically, $175.00 for treatment by Dr. Davis on May 10, 2017; $175.00 and $25.00 for two visits to Dr. Sing on October 25, 2017; and $92.00 for treatment by Dr. Davis on March 14, 2018. (R.R. at 4a.)

### *Proceedings before the WCJ*

Employer presented the deposition testimony of Dr. Reinhardt, who testified that she reviewed records of Dr. Davis from February 20, 2007, through April 11, 2018. She also reviewed records of other providers included with Dr. Davis's records, as listed in her report.[2] (Deposition of Sarah Reinhardt, D.O.,

---

[2] Dr. Reinhardt's report, dated May 10, 2018, indicated that Dr. Davis's records included records of other providers: Treatment, Lab, and Medication Records from 02/20/07 through 04/11/18 (250 pages); Treatment Records from Crozer Keystone Health System, 09/14/00 through 11/27/00 (35 dates); Operative Report, Lumbar Microdiscectomy, Vidyadhar S. Chitale, M.D., 08/07/00; Treatment Records, Neurosurgery, Vidyadhar S. Chitale, M.D., 06/01/01; Treatment Records, Sleep Disorders Center, Annmarie Gaskin, M.D., 09/17/10; Treatment Records, Orthopedics, Philip M. Maurer, M.D., 04/19/02, 04/30/02, and 05/21/02; Treatment Records, Urology, Pierre Ghyad, M.D., 04/21/02; Treatment Records, Orthopedics, M. Darryl Antonacci, M.D., 10/01/01, 10/29/01, and 12/27/01; Treatment Records, Psychiatry, Timothy J. Michals, M.D, 04/03/07; Treatment Records, Psychology, Jacques Lipetz, Ph.D., 08/30/05 and one not dated; Treatment Records, Pain Management, John Park, M.D., 10/10/12; Home Medical Services, Durable Medical Equipment Dispensed (Stimulation Device), 05/22/02; Emergency Room Records, Fitzgerald Mercy Catholic Medical Center, 06/03/01; Discharge Records, Springfield Hospital, 04/06/17; Discharge Records, Bryn Mawr Hospital, Antonis Pratsos, M.D., 12/11/12; EMG/NCV (Electromyography/Nerve Conduction Velocity) Report, 09/27/01; X-ray Report, Left Hip, Left Foot, and Ankle, 04/24/02; and MRI (Magnetic Resonance Imaging) Report, Lumbar Spine, 10/13/08. (R.R. at 268a.)

4

1/12/19, at 17-18; R.R. at 303a-04a.) Dr. Reinhardt stated that Claimant underwent back surgery approximately four months after the initial injury in April 2000 and saw multiple physicians until Dr. Davis took over his care. She described the surgery as a lumbar hemilaminectomy and microdiscectomy at the left L4-5 and a foraminotomy of L5-S1. *Id*. at 19-20; R.R. at 305a-06a.

Dr. Reinhardt explained that Dr. Davis treated Claimant for degenerative disc disease, lumbar radiculopathy, insomnia, and constipation. *Id*. Dr. Reinhardt found routine office visits reasonable and necessary at a frequency of once per month. *Id*. at 20-21; R.R. at 306a-07a. She found the use of Valium reasonable and necessary as it can be used for the relief of muscle spasm and found Sonata reasonable for treatment of insomnia and MiraLAX powder reasonable for chronic constipation, which is a common side effect of opioid medications. *Id*. at 20-23; R.R. at 306a-09a. She found Elavil reasonable and necessary as it is a common antidepressant and is helpful in the case of neuropathic pain. *Id*.

Regarding Claimant's prescription for Oxycontin, Dr. Reinhardt noted that Claimant's regimen included taking Oxycontin *80 mg* once every 12 hours in the morning and evening, and Oxycontin *60 mg* at noon. Dr. Reinhardt testified, however, that Oxycontin, 60 mg at noon and 80 mg every two hours was not reasonable and necessary. *Id*. at 23; R.R. at 309a. She stated that Oxycontin is a reasonable analgesic choice for Claimant, but his total combined narcotic dose was 330 MME, which far exceeded the CDC guidelines' upper limit of 120 MME. *Id*. at 24; R.R. at 310a. She stated that the potential consequences of Claimant's dosage level were increased risk of accidental overdose and respiratory depression and other side effects from opioids. *Id*. at 24-25; R.R. at 310a-11a.

On cross-examination, Dr. Reinhardt acknowledged that she had patients who required treatment outside of CDC guidelines, but rarely. *Id*. at 27; R.R. at 313a. She also acknowledged that she had never met or treated Claimant, and that Dr. Davis had been treating Claimant for 12 years. *Id*. at 28; R.R. at 314a.

Employer also submitted the report of Dr. Hampton. Dr. Hampton reviewed all treatment by Dr. Sing from August 27, 2018, forward. (Sean P. Hampton, D.O. Report at 1; R.R. at 277a.) He also reviewed the same medical records from other treatment providers that were reviewed by Dr. Reinhardt. Dr. Hampton observed that before surgery, Claimant participated in physical and aquatic therapy with no sustained pain relief. *Id*. at 3-4; R.R. at 279a-80a. He continued to have significant radiating low back pain after surgery despite physical therapy, epidural steroid injections, and medications. *Id*. Claimant's last visit with Dr. Sing prior to the period under review was October 25, 2017. *Id*. He returned to Dr. Sing August 27, 2018, and was seen September 24, 2018, and October 22, 2018, with diagnoses of chronic low back pain, lumbar radiculopathy, insomnia, anxiety, and opioid-induced constipation. *Id*.

Dr. Hampton opined that while Claimant's diagnoses supported a prescription for a narcotic pain reliever, the combined total of Oxycontin prescribed by Dr. Sing "far exceeded typical standards of practice and recognized medication and CDC guidelines." *Id*. at 7; R.R. at 283a. He also noted that abrupt discontinuation of narcotic medications can result in health and withdrawal issues, such that a six-month period for weaning would be reasonable and necessary. *Id*. Dr. Hampton thus found Oxycontin reasonable and necessary only through June 7, 2019, with reduced dosages and frequencies to completion of weaning, and Valium, Elavil,

MiraLAX, and blood/urine testing reasonable and necessary. *Id*. at 7-8; R.R. at 283a-84a.

In opposition to Claimant's penalty petition, Employer submitted, among other things, an affidavit of Lorie Myers, a claims representative for AIG Claims Services, Inc. (R.R. at 322a-33a.) Ms. Myers stated that the denial of the March 14, 2018 charge for $92.00 was inadvertent, and that the charge had been repriced and paid. *Id*. She stated that she was not aware of any additional unpaid bills related to Claimant's treatment. *Id*. She stated that the out-of-pocket payments by Claimant were for Oxycontin, which had been found unreasonable and unnecessary from April 12, 2018, forward; the prescription for Oxycontin was denied because Oxycontin had been found unreasonable and unnecessary, and the prescription for Narcan was denied because Narcan was not a covered medication. Ms. Myers' affidavit appeared to be signed but was not dated or notarized. *Id*.

Claimant preserved a hearsay objection to the affidavit, noting that the parties had agreed to depositions and medical records but not to an unsworn affidavit of the claims representative. *Id*. at 259a.

The independent medical examination (IME) report of Dr. Ingram, dated February 25, 2019, was admitted as the WCJ's exhibit. Claimant's then-current medications were Oxycontin 60 mg, 80 mg, and 40 mg, Valium, amitriptyline, Lipitor, aspirin, and isophiril. (IME Report of William T. Ingram, D.O. at 2; R.R. at 21a.) Dr. Ingram found the non-opioid medications appropriate. *Id*. at 4; R.R. at 23a. Regarding Claimant's Oxycontin dosage, Dr. Ingram commented that the treating physicians had indicated a desire to increase other types of therapies and decrease the Oxycontin dose, and Claimant was in favor of it. *Id*. at 4-5; R.R. at 23a-24a. Dr. Ingram further stated that the current dosage was not dangerous *per se* as Claimant

7

was compliant and was carefully monitored, and there were no indications of inappropriate behavior. *Id.* Dr. Ingram stated that neuropathic pain modulating medications such as gabapentin or Lyrica would be a good choice to decrease narcotic use and that it may take a year to achieve a 33% decrease in Claimant's Oxycontin dosage. *Id.* He described the current narcotic use as "a bit on the high side, but certainly not dangerous, especially as prescribed and monitored for this patient." *Id.*

Claimant presented the deposition testimony of his treating physician, Dr. Davis, who is board certified in family practice with a subspecialty board certification in pain management and hospice and palliative care. Dr. Davis testified that Claimant had exhausted all conservative treatments, injections, and surgery. (Deposition of Christopher Davis, D.O. at 16; R.R. at 180a.) He stated that he had been treating Claimant for about 12 or 13 years and saw Claimant monthly. *Id.* at 12-13; R.R. at 176a-77a. Dr. Davis stated that when a patient is prescribed opioids, that patient is required to sign a contract and undergo random urine screens and pill counts as necessary. *Id.* at 13-14; R.R. at 177a-78a. Dr. Davis testified that Claimant was compliant with all requirements and there had been no diversion or abuse of medications. *Id.* at 14; R.R. at 178a.

Dr. Davis testified that the CDC guidelines are recommendations, and that he strives to have his patients take the lowest effective dose of an opioid medicine when possible. *Id.* at 15; R.R. at 179a. He stated that Claimant is a failed surgery patient who has been stable for several years and compliant with the recommended safeguards. *Id.* at 16; R.R. at 180a. He further stated that he has conversations with Claimant monthly about other non-opioid treatments. *Id.* at 16-17; R.R. at 180a-81a. Attempts to decrease the dose caused increased pain and

8

increased symptoms with activity. *Id*. Dr. Davis did not feel that a different medication would give Claimant the same pain relief he was getting with the current medication. *Id*. at 19; R.R. at 183a. He would entertain changing to a new medication if and when there was a need for a change. *Id*.

Regarding Claimant's penalty petition, Dr. Davis testified that bills for three dates of treatment had not been paid: May 10, 2017, October 25, 2017, and March 14, 2018. He stated that any remaining bills that were not paid were incurred during the period under review. *Id*. at 9-12; R.R. at 173a-76a. Dr. Davis further testified that his office customarily submits bills to carriers on HCFA 1500 forms, with LIBC-9 forms and office notes for the date of service. To the best of his knowledge, that procedure had been followed. *Id*. An itemization of charges of Springfield Sports Medical Center for dates of service beginning April 17, 2007, and ending November 5, 2018, was made an exhibit to Dr. Davis's deposition. The itemization lists the charges as $92.00 for May 10, 2017, $175.00 and $25.00 for October 25, 2017, and $92.00 for March 14, 2018. (Davis Deposition Ex. C-Davis-2.)

On cross-examination, Dr. Davis testified that Claimant was first prescribed Oxycontin on May 14, 2001, by Dr. Sing, who is Dr. Davis's partner. *Id*. at 23-24; R.R. at 187a-88a. Claimant had been on 60 mg at noon and 80 mg every 12 hours for approximately 10 years. *Id*. Dr. Davis further testified that he tried decreasing the dose every six months, however, Claimant's blood pressure increased, and his symptoms were not managed. *Id*. at 25; R.R. at 189a.

Dr. Davis agreed that there are potential side effects of long-term use of opioid medication, including addiction and overdose, and he agreed that opioids are discouraged for chronic non-malignant back pain. *Id*. at 26-27; R.R. at 190a-91a. He

9

stated that the recommendations for treatment have changed since Claimant was first prescribed Oxycontin in 2000 and that a new patient with new back pain would not necessarily be treated the same way. *Id.* at 26-28; R.R. at 190a-92a.

Claimant testified that he was still treating with Dr. Davis and Dr. Sing and saw them once a month. (Deposition of Frank Hughes, 1/21/19, at 6; R.R. at 234a.) He stated that there had been efforts to decrease the dosage of his medication over the past six or eight months and that he was dealing with it. *Id.* at 6-7; R.R. at 234a-35a. On cross-examination, Claimant clarified that Dr. Davis and Dr. Sing fill in for each other and only one prescribes Oxycontin at a time. *Id.* at 14; R.R. at 242a. He stated that his Oxycontin regimen had decreased from 80-60-80 to 80-60-60 and he planned to continue to try to decrease the dosage. *Id.* at 14-15; R.R. at 242a-43a.

*WCJ's Decision Affirmed by the Board*

On August 1, 2019, the WCJ issued a determination crediting Dr. Hampton's opinions, Dr. Reinhardt's opinions, and the opinion of Dr. Ingram, in part. He also credited Claimant's testimony as to the benefit derived from the prescription medications but found that the medical evidence supported the recommended attempts to wean Claimant off the medications and reduce unnecessary medical visits.

The WCJ found Dr. Reinhardt's opinion that Oxycontin as prescribed by Dr. Davis was unreasonable and unnecessary medical treatment to be credible and convincing based upon her review of the medical records, as outlined in her UR determination. (WCJ Decision, 8/1/19, Finding of Fact (F.F.) No. 19.) He found that Dr. Reinhardt was credible and convincing that the Oxycontin as prescribed by Dr. Davis was unreasonable and unnecessary medical treatment for Claimant's April 1, 2000 employment injury. *Id.* The WCJ credited Dr. Reinhardt's opinion regarding the risks from opioid medication including accidental overdose and respiratory

10

depression along with her opinion that other treatments could be utilized to prevent the use of high dosages of Oxycontin to be credible and convincing and supported by the records she reviewed. *Id*.

The WCJ credited Dr. Hampton's opinion that the daily dosage of Oxycontin prescribed by Dr. Sing exceeded the CDC guidelines and was three times over the recommended amount and Dr. Hampton's recommendation of weaning Claimant from opioid use into the future. (F.F. No. 25.)

The WCJ noted that Dr. Davis acknowledged that Claimant was using a high level of prescribed medications. He found that there was insufficient evidence to show attempts to wean Claimant off of Oxycontin. (F.F. No. 20.)

Regarding Dr. Ingram's opinion, the WCJ found that he was credible, in part. (F.F. No. 22.) The WCJ found that Dr. Ingram's finding that the dose of Oxycontin prescribed to Claimant was reasonable was inconsistent with the acknowledgement as to the high doses of these opioids in this case. *Id*. The WCJ found that Dr. Ingram's opinion was credible that a reduction of the amount of Oxycontin prescribed to Claimant was necessary. *Id*.

Regarding Claimant's penalty petition, the WCJ found that Claimant failed to establish a violation of the Act. The WCJ summarized the affidavit of Ms. Myers in which she indicated that she was unaware of bills that were outstanding. (F.F. No. 18.) The WCJ noted that although Dr. Davis testified regarding outstanding bills, this testimony was not supported by documentation. (F.F. No. 20.) The WCJ determined that Claimant did not submit an itemization and proof of submission of the unpaid medical expenses to the correct carrier. As a result, the WCJ found that the documents submitted by Claimant were insufficient to support a violation of the terms of the Act. (F.F. No. 23.)

On August 8, 2019, Claimant appealed the WCJ's decision to the WCAB. On October 29, 2019, Claimant submitted a supplemental brief advising that new CDC guidelines issued on October 10, 2019, were directly relevant to the issues involved, identifying the dangers posed to all patients "forced" to abruptly stop taking opioids, and requesting that the matter be remanded to the WCJ to consider the current guidelines.[3] On March 8, 2021, the WCAB circulated an opinion affirming the WCJ's decision in its entirety. R.R. at 355a-76a. Regarding Claimant's contention that the WCJ's decision should be vacated and remanded for consideration of the revised CDC guidelines, the WCAB disagreed, explaining that

> the risks of abrupt discontinuation of opioid medications were taken into account by both Dr. Ingram and Dr. Hampton. Dr. Davis also acknowledged that Claimant's treatment regimen was not in conformance with present-day standards, and Claimant testified that his regimen had been adjusted with a goal of decreasing his medication use. We do not agree that a remand is necessary for consideration of the detrimental effects of an abrupt withdrawal of opioid medications.

*Id.* at 374a-75a.

---

[3] Our review is limited to the certified record. Neither the petition for rehearing nor the WCAB order denying the same appear in the certified record but they are provided in Claimant's reproduced record. Absent any objection from Employer, we will address the same herein.

On March 23, 2021, Claimant filed a request for rehearing. *Id*. at 377a-80a. That request was denied by the WCAB on March 30, 2021. *Id*. at 398a. Before this Court,[4] Claimant raises the following seven issues:[5]

1. Whether the WCAB failed to address all issues raised by Claimant?

2. Whether the UR determinations were invalid because the insurer failed to list "other medical providers" on the UR Requests?

3. Whether Dr. Reinhardt's UR determination was invalid for the reason that she was not board certified in pain management?

4. Whether the UR reviews performed by Dr. Reinhardt and Dr. Hampton were unequivocal and definitive?

5. Whether the decision of the WCJ was a "reasoned decision"?

6. Whether the WCAB abused its discretion in denying Claimant's request for a rehearing?

7. Whether Claimant's constitutional due process rights were violated in the litigation before the WCJ?

---

[4] This Court reviews the WCJ's adjudication to determine whether the necessary findings of fact are supported by substantial evidence, whether WCAB procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *MV Transportation v. Workers' Compensation Appeal Board (Harrington)*, 990 A.2d 118, 120 n.3 (Pa. Cmwlth. 2010).

[5] Claimant actually raises nine issues in his Issues Presented section of his brief. *See* Claimant's Br. at 4. For clarity, we have rephrased and combined our discussion of some of Claimant's issues.

**1.**

In his first issue, Claimant argues that the WCAB failed to address all issues he raised in his appeal from the WCJ's decision. We have reviewed the record and the decision of the WCAB and are satisfied, as explained below, that the WCAB addressed all of the issues raised by Claimant in his appeal to the WCAB.

**2.**

Next, Claimant contends that the UR requests were defective because they did not list all of his other treatment providers.[6] (R.R. at 97a, 12a.) Because of this alleged defect, Claimant argues that the reviewers, Dr. Reinhardt and Dr. Hampton, were not provided with the opportunity to review all his medical records and this rendered their UR determinations void *ab initio*.

In *Seamon v. Workers' Compensation Appeal Board (Sarno & Son Formals)*, 761 A.2d 1258 (Pa. Cmwlth. 2000) (*en banc*), the claimant argued the failure to obtain medical records from his earlier treating doctors rendered the UR determinations inadmissible or, at least, incompetent to support the finding that the treatment was not reasonable or necessary. *Id*. at 1261. This Court disagreed and determined that the URO's failure to obtain all records did not invalidate the review. We concluded that a lack of the complete documentary medical history does not automatically preclude a UR reviewer from deciding the reasonableness or necessity of a particular treatment, nor does it preclude a WCJ from crediting and relying on the UR determination.[7]

---

[6] Before the WCAB, Claimant argued that UR was waived because the UR requests were not properly completed. The WCAB addressed this argument on pages 4-6 of its opinion.

[7] *See also Solomon v. Workers' Compensation Appeal Board (City of Philadelphia)*, 821 A.2d 215 (Pa. Cmwlth. 2003), where this Court, relying on *Seamon*, observed that, in the absence of a statement by a reviewer that she was unable to render an opinion because medical records were **(Footnote continued on next page…)**

14

Claimant acknowledges that pursuant to *Seamon*, failure of a reviewer to obtain the entire medical file does not automatically preclude a reviewer from assessing the reasonableness or necessity of a particular treatment. He contends, however, that his argument is different than the one we considered in *Seamon*. He argues that when, as here, the reviewer's "inability to even seek the records" is due to the insurer/employer's failure to identify and list them on the UR request form, then the UR determination is defective and should be invalidated. (Claimant's Br. at 18.) Stated differently, he contends that listing "other treatment provider(s)" on the UR request form is mandatory[8] and suggests that the failure to do so should automatically render a UR determination defective. There are several problems with Claimant's argument.

First, we decline to assume, as Claimant does, that the failure to list a claimant's "other treatment provider(s)" on the UR request form will necessarily make it impossible for the reviewer to obtain and review other providers' records. That simply is not the case as demonstrated by this record. Both Drs. Reinhardt and Hampton reviewed copious records from Claimant's other treatment providers, and

---

**(continued…)**

missing, there was no need for her to review all records of everyone who provided medical treatment to the claimant in order to opine solely concerning the reasonableness and necessity of the treatment at issue.

[8] In support, Claimant points to the medical cost containment regulations at 34 Pa. Code §127.407(a), which provides that "[i]n order to determine the reasonableness or necessity of the treatment under review, UROs shall obtain for review all available records of all treatment rendered by all providers to the employee for the work related injury," and 34 Pa. Code §127.462, which provides that "UROs shall attempt to obtain records from all providers for the entire course of treatment rendered to the employee for the work related injury which is the subject of the UR request, regardless of the period of treatment under review."

15

they were able to conduct their reviews of the challenged treatment in the context of Claimant's entire course of care for his work-related injury. As noted, both Drs. Reinhardt and Hampton demonstrated their knowledge of Claimant's current condition and recounted his lengthy medical history and treatments, from the date of his accident nearly 20 years ago, to the present. That history was based on their review of other treatment providers' medical records that were, not surprisingly, amongst Dr. Sing's and Dr. Davis's records.

We also fail to discern how the question posed by Claimant (failure to list other treatment providers on UR request form) is fundamentally different than the one we considered in *Seamon*. The Court in *Seamon* held that a UR determination that did not include a review of the medical treatment by other providers did not automatically render the reviewers' opinions invalid. Here, even if the reviewers did not conduct a review of the medical records of other providers due to the insurer's failure to identify them on the UR request form, it would not automatically mean the reviewers would be unable to render a determination of reasonableness or necessity under *Seamon*. Focusing on the fact that the other providers were not listed on the UR request form seems to us to be beside the point. In any event, as discussed, the reviewers did review medical records from Claimant's other treatment providers, including his records from his psychologist and surgeon.[9] Claimant does not identify any other provider's records that were not reviewed that would have in any way changed the determination of the reviewers.

---

[9] Claimant argues that his surgeon and psychologist were not identified on the UR request form. However, as noted, both reviewers did review his surgeon's records and records of his psychologist.

16

Finally, the absence of other providers' medical records, if any, goes to the WCJ's weighing of the evidence, which is beyond our scope of review. *See Solomon* (the breadth of information reviewed by the UR reviewer is a factor which the WCJ may consider, but it is no more conclusive than any other single factor considered in evaluating the credibility of conflicting expert opinions).

In *Patton v. Workers' Compensation Appeal Board (Delaware River Port Authority)*, (Pa. Cmwlth., No. 1095 C.D. 2017, filed February 9, 2018O, 2018 WL 792104,[10] the claimant argued, as Claimant does here, that the reviewer's UR determination was defective because the UR request failed to list all of the claimant's other treatment providers. This Court rejected the argument, explaining that

> the regulatory scheme developed under the Act contemplates assessment of reasonableness and necessity of a specific provider's treatment in the context of the overall course of care provided to the claimant. However, we expressly found **an incomplete documentary medical history "does not automatically preclude a UR doctor from making a determination of reasonableness or necessity; nor does it preclude a WCJ from crediting and relying on the UR report."** [*Seamon*, 761 A.2d at 1262].
>
> Moreover, this Court pointed out in *Seamon* that in weighing the evidence and determining credibility, the WCJ can consider any irregularities in the review process. Once the employer satisfies its burden of proof by relying on a UR determination, the claimant then has the burden to rebut that evidence, which he may do by submitting other medical evidence. *Id.*

*Patton*, slip op. at *8, 2018 WL 792104 at *4 (emphasis added).

---

[10] Pursuant to section 414(a) of this Court's Internal Operating Procedures, we may cite an unreported opinion of this Court for its persuasive value. 210 Pa. Code §69.414(a).

Here, neither Dr. Reinhardt nor Dr. Hampton indicated that they were unable to render an opinion due to the absence of information regarding any other providers. They never indicated that they were unable to assess Claimant's current medical condition and complaints, which were essential to their determination if the Oxycontin dosages prescribed were necessary or reasonable. As such, the failure to indicate other treatment providers on the UR request forms was neither fatal to the reviewers' UR determinations, nor did it preclude Dr. Reinhardt or Dr. Hampton from determining the reasonableness or necessity of the treatments under review. Citing *Seamon*, the WCAB accurately confirmed that the failure to list additional providers on the UR request forms did not preclude UR or preclude the WCJ from crediting and relying upon the reports. We determine no error.

**3.**

In his third issue, Claimant argues that Dr. Reinhardt's review was invalid because she was not licensed in the same profession and with the same or similar specialty as the provider under review, as required by section 306(f.1)(6)(i) of the Act, 77 P.S. §531(6)(i). Claimant's argument is unavailing.

The Act requires that the reviewer be licensed by the Commonwealth in the same profession and with the same or similar specialty as the provider under review. Section 306(f.1)(6)(i) of the Act, 77 P.S. §531(6)(i). The implementing regulation, 34 Pa. Code §127.466, requires the URO to forward the records, the request for UR, the notice of assignment and a Bureau-prescribed instruction sheet to a reviewer licensed by the Commonwealth in the same profession and having the same specialty as the provider under review. 34 Pa. Code §127.467. As the WCAB observed, neither the Act nor the regulations address licensing at a subspecialty level.

18

Both Dr. Davis and Dr. Reinhardt were board certified in family practice. (R.R. at 363a.) Thus, both the reviewer and the reviewee were certified in the same specialty, family medicine. The appointment of Dr. Reinhardt, therefore, did conform to the requirements of the Act and implementing regulations.

To the extent that Dr. Reinhardt is alleged to have lacked adequate qualifications to review the treatment of Dr. Davis, this was an issue of credibility to be determined by the WCJ. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043 (Pa. 2003); *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383 (Pa. Cmwlth. 1995). Credibility determinations will not be disturbed unless their basis is arbitrary and capricious, or so fundamentally dependent on a misapprehension of materials facts, or so otherwise flawed, as to render the basis irrational. *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14 (Pa. Cmwlth. 2008). That standard was not met here. Claimant has not established that the WCJ made arbitrary, capricious, or otherwise flawed findings regarding the qualifications of Dr. Reinhardt.

**4.**

Next, Clamant contends that the reviewers, Dr. Reinhardt and Dr. Hampton, offered improper advisory opinions, and not definitive determinations because they were unable to state with certainty what dosage of opioids would be proper, how to achieve a lower dosage, or what course of treatment would be appropriate if continuing efforts to reduce the dosage remain unsuccessful. Claimant argues that they only spoke in terms of what Claimant's treating providers "should try" to do. (Claimant's Br. at 23.) Again, we must disagree.

The single issue in a UR petition is the reasonableness and necessity of the treatment under review. *Warminster Fiberglass v. Workers' Compensation*

19

*Appeal Board (Jorge)*, 708 A.2d 517 (Pa. Cmwlth. 1998). The employer has the never-shifting burden throughout the UR process of proving that the challenged medical treatment is not reasonable or necessary, no matter which party prevailed at the UR level. *Topps Chewing Gum v. Workers' Compensation Appeal Board (Wickizer)*, 710 A.2d 1256 (Pa. Cmwlth. 1998).

Treatment may be reasonable and necessary even if it is designed to manage the claimant's symptoms rather than to cure or permanently improve the underlying condition. *Trafalgar House v. Workers' Compensation Appeal Board (Green)*, 784 A.2d 232 (Pa. Cmwlth. 2001). Accordingly, the WCJ should consider evidence of the palliative effect of treatments under review and weigh that evidence in deciding a UR petition. *Ryndycz v. Workers' Compensation Appeal Board (White Engineering)*, 936 A.2d 146 (Pa. Cmwlth. 2007). A reviewer may consider any risk to the patient in determining the reasonableness and necessity of a prescribed medication, *Sweigart v. Workers' Compensation Appeal Board (Burnham Corp.)*, 920 A.2d 962 (Pa. Cmwlth. 2007), and a WCJ may rely on the detrimental effects of a medication that may be palliative in finding the use of the medication not reasonable and necessary. *Bedford Somerset MH/MR v. Workers' Compensation Appeal Board (Turner)*, 51 A.3d 267 (Pa. Cmwlth. 2012). A lack of progress in pain improvement is also a factor for the WCJ's consideration. *Womack v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 83 A.3d 1139 (Pa. Cmwlth. 2014).

Here, both reviewers unequivocally provided definitive determinations that the Oxycontin being prescribed was unreasonable and unnecessary. Dr. Reinhardt testified that Claimant's total combined narcotic dose was 330 MME and that the CDC guidelines' upper limit is 120 MME. Dr. Hampton agreed that the

20

combined total dosage of Oxycontin prescribed by Dr. Sing exceeded typical standards of practice and recognized medication and CDC guidelines, and was, therefore, not reasonable and necessary.

To the extent that Claimant argues that it was the reviewers' function to devise a treatment plan for him, we cannot agree. Their opinions appropriately considered the palliative nature of the treatment, the risks to Claimant of continuing at very high doses of opioid medication, and the risks to Claimant of an abrupt cessation of the medication. We determine no error.

**5.**

Next, Claimant argues that the WCJ's decision was not a "reasoned" decision. He argues that the WCJ relied on incompetent conclusions that were contrary to the evidence as a whole, and he capriciously disregarded the identical explanations offered by six experts. Further, he contends that the WCJ provided no actual reason for the evidence found credible. We disagree.

Section 422(a) of the Act, 77 P.S. §834, provides that a WCJ must render a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole, and must clearly and concisely explain the rationale for the decision so that parties to a workers' compensation action can understand the reasoning underlying a particular result. *Daniels*. The WCJ must articulate an actual objective reason for his credibility determinations of witnesses other than those testifying in person at the hearing. *Id*. An appellate tribunal may not imagine the reasons for a WCJ's credibility determinations. *Id*.

An adequate explanation for a determination is provided when the WCJ outlines the evidence considered, states credible evidence relied upon, and establishes the reasons underlying the ultimate decision rendered. *Id*.

21

Further, as the ultimate finder of fact and the sole authority for determining the weight and credibility of evidence, the WCJ may accept or reject the testimony of any witness in whole or in part, including medical witnesses. *Lombardo v. Workers' Compensation Appeal Board (Topps Co., Inc.)*, 698 A.2d 1378 (Pa. Cmwlth. 1997). The WCJ's findings will not be disturbed if they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa. Cmwlth. 1995).

Here, the WCJ clearly outlined the evidence considered and the credibility determinations made, as well as the reasons underlying his ultimate determination that Claimant's treatment under review was not reasonable and necessary, as required for rendering a reasoned decision. *Daniels*. Under these circumstances, his decision provided a meaningful basis for appellate review.

**6.**

In his sixth issue, Claimant submits that the WCAB erred by denying his petition for rehearing based on after-discovered evidence, *i.e.*, the updated CDC guidelines. He argues that Dr. Reinhardt and Dr. Hampton based their opinions on then-current CDC guidelines, which were changed while Claimant's appeal to the WCAB was pending. Claimant contends that he brought the new guidelines to the WCAB's attention by supplemental brief and petition for rehearing, but they were erroneously denied.

The grant or denial of a rehearing is generally within the discretion of the WCAB and the WCAB will be reversed only for an abuse of discretion. *Cudo v. Hallstead Foundry, Inc.*, 539 A.2d 792 (Pa. 1989); *City of Philadelphia v. Workers' Compensation Appeal Board (Harvey)*, 994 A.2d 1 (Pa. Cmwlth. 2010); *Payne v. Workers' Compensation Appeal Board (Elwyn, Inc.)*, 928 A.2d 377 (Pa. Cmwlth.

22

2007). A rehearing is not allowable (1) for the purpose of strengthening weak proofs that have already been presented, (2) to permit a party to introduce previously available evidence to attempt to cure a failure to satisfy a party's burden of proof, or (3) for the purpose of hearing additional testimony that is merely cumulative. *Washington v. Workers' Compensation Appeal Board (National Freight Industries, Inc.)*, 111 A.3d 214 (Pa. Cmwlth. 2015); *Paxos v. Workmen's Compensation Appeal Board (Frankford-Quaker Grocery)*, 631 A.2d 826 (Pa. Cmwlth. 1993).

The WCAB directly addressed the arguments in Claimant's supplemental brief and, specifically, the reference to the new CDC guidelines in its opinion. As the WCAB noted, the adverse effects of the abrupt discontinuation of opioid medications were considered by both Dr. Ingram and Dr. Hampton, and no witness had recommended the abrupt discontinuation of Claimant's Oxycontin. To the contrary, Dr. Hampton specifically found that a six-month weaning period was reasonable and necessary. Dr. Ingram observed that it could take a year to effectuate a 33% reduction in Claimant's opioid dosage. Thus, we do not agree that a remand was necessary for consideration of the detrimental effects of an abrupt withdrawal of opioid medications. The WCAB did not abuse its discretion in denying Claimant's request for a rehearing.

**7.**

In his final issue, Claimant argues that his constitutional right to due process was violated. He claims the WCJ erroneously admitted the claim adjuster's affidavit over his hearsay objection and capriciously disregarded undisputed competent evidence that he properly submitted medical bills for treatment and that that they remain unpaid.

23

Penalties are provided in section 435 of the Act,[11] and are appropriate where a violation of the Act or the WCAB's rules and regulations occurs. The assessment of penalties and the amount of penalties imposed, if any, are matters within the WCJ's discretion. *Gumm v. Workers' Compensation Appeal Board (Steel)*, 942 A.2d 222 (Pa. Cmwlth. 2008). "[A] violation of the Act or its regulations must appear in the record for a penalty to be appropriate." *Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000). Further, a claimant who files a penalty petition bears the burden of proving a violation of the Act occurred. *Id.* If the claimant meets his initial burden of proving a violation, the burden then shifts to the employer to prove it did not violate the Act. *Id.*

The regulations require medical providers to submit medical bills for payment on HCFA 1500, UB92, or any successor forms. 34 Pa. Code §127.201. Monthly medical reports are required to be submitted in any month during which treatment was provided to a claimant, and the insurer is not obligated to pay for the treatment covered by the report until it receives the report. 34 Pa. Code §127.203. Under section 306(f.1)(5) of the Act, 77 P.S. §531(5), medical bills must be paid within 30 days of receipt unless the employer disputes the causal connection or the reasonableness and necessity of the treatment. An employer may deny payment of medical expenses if the medical bills are not submitted on one of the forms specified in section 127.201 of the regulations, 34 Pa. Code §127.201, relating to bills and forms. Insurers are not responsible to pay for treatment until such form is submitted as specified. Further, if a medical provider does not submit the required medical report on the prescribed form, the insurer is not obligated to pay for the treatment

---

[11] Added by the Act of February 8, 1972, P.L. 25, 77 P.S. §991.

until the required report is received. 34 Pa. Code §127.203(d). If LIBC forms are not timely submitted to the employer or its insurer, the employer should not be held liable for payment until the LIBC forms are submitted. Section 306(f.1)(2) of the Act 77 P.S. §531(2); 34 Pa. Code §127.203.

Here, the WCJ concluded that Claimant failed to establish a violation on the record. We discern no error. Claimant had the burden of establishing a violation. *Shuster*. The WCJ found Dr. Davis's testimony was insufficient to establish that the specific bills in question were properly submitted with the accompanying HCFA forms and medical reports, to the correct carrier. Finally, contrary to Claimant's contention that the WCJ improperly made a finding of fact based on hearsay, the WCJ did not rely on Ms. Myers' affidavit in concluding that Claimant failed to establish that properly submitted invoices for reasonable, necessary, and causally connectedi medical treatment, were not paid.

Accordingly, we conclude that Claimant's constitutional right to due process was not violated in the litigation before the WCJ.

**Conclusion**

Based on the foregoing, the March 8, 2021 and March 30, 2021 orders of the WCAB are affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

25

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Hughes, :
         Petitioner :
          : No. 333 C.D. 2021
      v. :
          :
Wawa, Inc. (Workers' Compensation :
Appeal Board), :
         Respondent :

## ***ORDER***

AND NOW, this 13ᵗʰ day of December, 2021, the March 8, 2021 and March 30, 2021 orders of the Workers' Compensation Appeal Board are hereby AFFIRMED.

 

_____
PATRICIA A. McCULLOUGH, Judge